# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| HAROLD HUGHES, o/b/o § <br> BARBARA L. HUGHES, deceased § <br> § <br> V. § <br> § <br> Commissioner of Social § <br> Security Administration § | <br><br><br>CASE NO. 4:05cv176<br>(Judge Schell/Judge Bush) |

## REPORT AND RECOMMENDATION OF
## UNITED STATES MAGISTRATE JUDGE

Barbara L. Hughes' ("Plaintiff") representative brings this appeal under 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). After carefully reviewing the briefs submitted by the parties, as well as the evidence contained in the administrative record, the Court finds that the Commissioner's decision should be reversed and this cause remanded for further proceedings.

## HISTORY OF THE CASE

Plaintiff filed for DIB and SSI on May 25, 2000. The applications were denied initially and upon reconsideration. Plaintiff subsequently requested a hearing before an Administrative Law Judge ("ALJ"). After holding a hearing on February 7, 2002, the ALJ issued a decision on June 10, 2002, finding that Plaintiff was not disabled from performing light work through June 2001, but that as of July 1, 2001, Plaintiff's visual impairment due to diabetes rose to the level of Listed Impairment 2.02; and Plaintiff was therefore found to be disabled. The Plaintiff subsequently requested that the Appeals Council conduct a review. The Appeals Council denied Plaintiff's request

1

on January 28, 2005.  Therefore, the decision of the ALJ became the final decision of the Commissioner.  Plaintiff now seeks judicial review of the final administrative decision pursuant to 42 U.S.C. § 405(g).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

After considering the record, the ALJ made the prescribed sequential evaluation. The ALJ made the following findings:

1. The claimant meets the disability insured status requirements as a statutorily blind individual because she is fully insured and has at least twenty-two quarters of coverage.

2. The claimant has not engaged in substantial gainful activity since her amended onset date of May 15, 1999.

3. The medical evidence establishes that the claimant has severe diabetes mellitus with neuropathy and retinophathy, hypertension and obesity.

4. The claimant had the residual functional capacity to perform light work with no more than occasional climbing, stooping and crouching before July 1, 2001.

5. The claimant's assertions regarding the limitations resulting from her impairments are found to be partially credible.

6. The claimant's impairments did not prevent her from performing her past relevant work as a cashier and fast food worker prior to July 1, 2001.

7. The severity of the claimant's impairment has met the requirements of section 2.02, Appendix 1, Subpart P, Regulations No. 4 since July 1, 2001, but not prior thereto.

8. The claimant has been under a "disability," as defined in the Social Security Act, since July 1, 2001, but not prior thereto.

(TR 26-27).

## STANDARD OF REVIEW

In an appeal under § 405(g), this Court must review the Commissioner's decision to determine whether there is substantial evidence in the record to support the Commissioner's factual findings, *Dellolio v. Heckler*, 705 F.2d 123 (5th Cir. 1983), and whether the Commissioner applied the proper legal standards in evaluating the evidence. *Smith v. Schweiker*, 646 F.2d 1075 (5th Cir. 1981); *see* 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985); *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983). This Court cannot reweigh the evidence or substitute its judgment for that of the Commissioner, *Chaney v. Califano*, 588 F.2d 958, 959, (5th Cir. 1979), and conflicts in the evidence are resolved by the Commissioner. *Carry v. Heckler*, 750 F.2d 479, 484 (5th Cir. 1985).

To establish disability, Plaintiff must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve months. Plaintiff must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy. 42 U.S.C. § 1382(a)(3).

## SEQUENTIAL EVALUATION PROCESS

Pursuant to the statutory provisions governing disability determinations, the Commissioner has promulgated regulations that establish a five-step process to

3

determine whether a claimant suffers from a disability. 20 C.F.R. § 404.1520 (1987). First, a claimant who, at the time of her disability claim, is engaged in substantial gainful employment is not disabled. 20 C.F.R. § 404.1520(b) (1987). Second, the claimant is not disabled if her alleged impairment is not severe, without consideration of her residual functional capacity, age, education, or work experience. 20 C.F.R. § 404.1520(c) (1987). Third, if the alleged impairment is severe, the claimant is considered disabled if his impairment corresponds to an impairment described in 20 C.F.R., Subpart P, Appendix 1 (1987). 20 C.F.R. § 404.1520(d) (1987). Fourth, a claimant with a severe impairment that does not correspond to a listed impairment is not considered to be disabled if she is capable of performing his past work. 20 C.F.R. § 404.1520(e) (1987). Finally, a claimant who cannot return to his past work is not disabled if she has the residual functional capacity to engage in work available in the national economy. 20 C.F.R. § 404.1529(f) (1987); 42 U.S.C. § 1382(a).

**Statement of Facts**

The decedent, Barbara L. Hughes, was born August 15, 1957. She was 41 years old on May 15, 1999, her alleged onset date of disability, and was considered a "younger individual" throughout the period now under consideration, i.e. until July 1, 2001, the date the ALJ ruled that Ms. Hughes became "disabled." Ms. Hughes graduated from high school and attended junior college for approximately two years, but completed no degree.

Ms. Hughes did not engage in substantial gainful work activity after May 15,

1999. Previously, she had worked at Gainesville Memorial Hospital from September 1998 to May 1999 as a cook, a skilled occupation demanding medium exertion. From September 1997 to June 1998, she held two part-time jobs: as a fast food worker at Dairy Queen and as a cashier at McFrugal's discount store, both considered unskilled jobs requiring light exertion.

The ALJ found that as of July 1, 2001, Ms. Hughes suffered from diabetic retinitis proliferans, which limited her visual acuity to a degree satisfying the criteria for presumptive medical disability described in the Commissioner's Listing of Impairments 2.02. The ALJ ruled that between May 15, 1999, and June 30, 2001, Ms. Hughes retained the residual functional capacity ("RFC") to perform the full range of light work. Light work demands lifting no more than 20 pounds at a time, with frequent lifting or carrying of objects weighing up to 10 pounds, and standing or walking, off and on, for a total of approximately six hours of an eight-hour workday.

Ms. Hughes suffered from diabetes mellitus for most of her life: she was diagnosed at age 15 and became insulin-dependent two years later. Type I diabetes, also known as juvenile diabetes, usually has an abrupt onset during the first two decades of life, in contrast to the generally milder Type II diabetes, which has a gradual onset, usually in obese individuals over age 35. There can be no disagreement that diabetes is a potentially devastating disease which can compromise an individual's health. Ms. Hughes was ravaged by this disease.

A thorough review of the medical records finds no support for the ALJ's short-sighted assessment that she was non-compliant in her treatment. Several records

indicate that her blood sugar was under control.  Other records indicate that her blood sugar was dangerously high.  Even with the best monitoring, blood sugars can escalate.  As the ALJ stated, Ms. Hughes had uncontrollable diabetes.  The records reflect that she did the best she could for her health given her lack of financial resources and depended on the government and her physicians to keep her on medication.  The Court notes that many of Mrs. Hughes high blood sugars concluded with her hospitalizations.   It is common medical knowledge that illnesses and infections can lead to higher blood sugars.

Even the ALJ acknowledged that high blood glucose and high blood pressure can damage the eyes over time. Ms. Hughes' longstanding and poorly controlled Type I diabetes caused peripheral neuropathy in both her legs and feet with numbness, insensitivity to pain, tingling and burning sensations, and loss of reflexes; peripheral neuropathy in her upper extremities, causing loss of grip strength; autonomic neuropathy causing fecal and urinary incontinence as well as chronic bladder and kidney infections; vascular disease, including atherosclerosis and high blood pressure, resulting in recurrent foot ulcers, one of which required amputation of her right second toe; and, of course, diabetic retinopathy.

## **Analysis**

The Court finds that the ALJ's assessment of Mrs. Hughes disability onset date is incorrect and without substantial evidence.  Social Security Ruling 83-20 prescribes the policy and procedure by which the ALJ should determine the onset date of a

disability. In disabilities of non-traumatic origin, such as Ms. Hughes' diabetes mellitus, SSR 83-20 sets out three factors to be considered in determining the onset date: the claimant's allegations, work history, and medical evidence. *Ivy v. Sullivan*, 898 F.2d 1045, 1048 (5th Cir. 1990).

The claimant's statement as to when her disability began is the "starting point" in determining the onset date. *Id.,* at 1048. In fact, the claimant's stated onset date is used as the established onset date if it is consistent with all of the evidence available. *Id.*; SSR 83-20. The Court notes that records in July 2001 indicate Mrs. Hughes' report that, since March, she could only see light (T.R. 227). Records from Wilson N. Jones Hospital note her report that she had developed blindness in her left eye and then blindness in her right eye within the last year (T.R. 286).

SSR 83-20 describes medical evidence as "the primary element in the onset determination" and, of course, the onset date chosen "can never be inconsistent with the medical evidence of record." SSR 83-20. Succinctly stated, how long the claimant's disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. *Id*. As SSR 83-20 cautions, "This judgment, however, must have a legitimate medical basis." *Id.*

The ALJ's finding of July 1, 2001, as the date Ms. Hughes' diabetic retinopathy first satisfied the criteria of Listing 2.02, has no "legitimate medical basis," as required by SSR 83-20. The ALJ relied on the report of a Dr. Jerry Gray, dated July 20, 2001, to find that Ms. Hughes was blind in her left eye and "nearly blind in her right eye" as of July 1, 2001. Dr. Gray did not perform a visual acuity test during his examination

of Ms. Hughes on July 20, 2001. In fact, Dr. Gray is not an ophthalmologist or optometrist; he is an emergency medicine physician. A "convincing rationale must be given for the date selected" as the claimant's disability onset date. SSR 83-20. The ALJ's only stated rationale for selecting July 1, 2001 as the date Ms. Hughes' retinopathy met Listing 2.02 is Dr. Gray's July 20, 2001 consultation report regarding Ms. Hughes left foot. SSR 83-20 recognizes that, with slowly progressive impairments, "it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling." *Id*. In such cases, it will be necessary to infer the onset date from the medical and other evidence that describes the history and symptomatology of the disease process. *Id*. *Spellman v. Shalala*, 1 F.3d. 357, 361 (5th Cir. 1993), enunciated the rule in this Circuit governing when a claimant's disability onset date must be inferred as those cases in which: (1) the claimant suffers from a "slowly progressive impairment(s)" and (2) the medical evidence regarding the onset date of a disability is "ambiguous." Type I diabetes is a "slowly progressive impairment," and the medical evidence regarding the date that Ms. Hughes' satisfied the criteria of Listing 2.02 is "ambiguous."

Type I diabetes is indisputably a "slowly progressive impairment" well known to cause damage to multiple body systems over time. After Ms. Hughes was diagnosed with diabetes in approximately 1972, she reportedly suffered eight episodes of ketoacidosis. She was in a diabetic coma for 28 hours in 1987. *Id*. By July 1999, hospitalization records document that she suffered from diabetic peripheral neuropathy evidenced by clinical findings of absent deep tendon reflexes in the lower extremities, diminished deep tendon reflexes in the upper extremities, absent sensation from the

8

ankles down into the feet bilaterally, and decreased sensation from knees to ankles bilaterally.

Consistent with a loss of sensation due to peripheral neuropathy, Ms. Hughes cut her right second toe without realizing it. Her toe became infected, requiring admission to the hospital for intravenous antibiotic treatment. After seven days, the infection had not cleared, gangrene set in, and her toe was surgically amputated. *Id*.

Poor healing is indicative of circulatory problems. Dr. Young Stokes noted on his consultative physical examination in September 2000 that Ms. Hughes, in fact, had developed impaired circulation of the lower extremities, which he diagnosed as peripheral vascular disease. He detected diminished peripheral pulses in her lower extremities and described Ms. Hughes' feet as "cool and dusky in color."

During her July 1999 hospitalization, Ms. Hughes had exhibited 1-2+ pitting edema only in her feet; by January 2000, she had developed edema up to her knees. At Dr. Stokes' September 2000 exam, he found 2+ pitting edema in Ms. Hughes' feet up to her knees bilaterally. *Id*. Dr. Stokes also noted loss of grip strength, particularly in Ms. Hughes' dominant right hand, indicative of upper extremity peripheral neuropathy.

In November 2000, Dr. Gene Herzog tested Ms. Hughes' arterial flow and found systolic readings above 200 mm Hg. at numerous levels. Dr. Herzog described such findings as showing "definite atherosclerosis of the vessels," making good blood sugar control "imperative." *Id*.

Dr. Stokes recorded Ms. Hughes' visual acuity on a simple Snellen chart screening during his September 2000 exam to be 20/50 bilaterally. Less than a year

9

later in July 2001, ophthalmologist Wood found "an old, very large vitreous hemorrhage" in Ms. Hughes' left eye and extensive neovascularization in her right eye. Ms. Hughes suffered from "slowly progressive" adverse effects of diabetes, including peripheral neuropathies of the lower and upper extremities, peripheral vascular disease, atherosclerosis, and retinopathy. Therefore, in setting her disability onset date, the ALJ was obliged to consult a medical advisor.

No medical source opined that Ms. Hughes' visual acuity first satisfied Listing 2.02 on July 1, 2001. Dr. Gray's July 20, 2001, report, cited by the ALJ as the basis for his finding that Ms. Hughes' diabetic retinopathy met Listing 2.02, is vague about the date Ms. Hughes' visual acuity deteriorated to Listing level. In the medical history recorded in his interview of Ms. Hughes, Dr. Gray wrote: "Specifically, in the last year, she has developed blindness in the left eye and near blindness in the right eye." The ALJ should have inferred Ms. Hughes' disability onset date by applying the legal standards set forth in SSR 83-20.

When an inference is necessary, the ALJ must obtain all available evidence to make the determination. *Spellman*, 1 F.3d at 363, quoting *DeLorme v. Sullivan,* 924 F.2d 841, 848 (9th Cir. 1991). The ALJ has a duty to investigate and develop the facts fully and fairly in a disability claim, regardless of whether the claimant is represented, in order to ensure that his decision is an informed decision based on sufficient facts. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995); *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984). More specifically, SSR 83-20 imposes a duty on the ALJ to develop additional evidence before inferring the claimant's disability onset date: "If there is information in the file indicating that additional medical

evidence concerning onset is available, such evidence should be secured before inferences are made." SSR 83-20 (emphasis added).

The ALJ erred by failing to call a medical expert to render an opinion about the first date Ms. Hughes' visual impairment could have been inferred to have become disabling. SSR 83-20 instructs that the inference of the appropriate onset date of disability is not a task for the ALJ alone. "At the hearing the ALJ should call on the services of a medical advisor when onset must be inferred." SSR 83-20. The Fifth Circuit Court enforced SSR 83-20's directive in *Spellman*: "(When)…the Secretary must infer the onset date, SSR 83-20 requires that that inference be based on an informed judgment. The Secretary cannot make such an inference without the assistance of a medical advisor." *Id*., at 362.

Because Ms. Hughes' insulin-dependent diabetes was a slowly progressive impairment, and the medical evidence was ambiguous with regard to her disability onset date, the ALJ was required to consult an ME to infer a disability onset date based on an informed judgment of the facts. *Spellman*, 1 F.3d at 363. The ALJ failed to properly follow SSR 83-20.

## RECOMMENDATION

Pursuant to the foregoing, the Court RECOMMENDS that the decision of the Administrative Law Judge be REVERSED and the cause REMANDED with instructions that the ALJ make a determination in accordance with SSR 83-20 and the conclusions contained herein.

Failure to file written objections to the proposed findings and recommendations

contained in this report within ten days shall bar an aggrieved party from attacking the factual findings on appeal.  *Thomas v. Arn*, 474 U.S. 140, 106 (1985); *Nettles v. Wainwright*, 677 F.2d 404, 408 (5th Cir. 1982) *en banc*.

**SIGNED this 26th day of June, 2006.**

                                    DON D. BUSH
                                  UNITED STATES MAGISTRATE JUDGE